IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Cory T. Credell                    )    Civil Action No.: 8:10-18-RMG-BHH
                                   )
                    Petitioner,    )
                                   )    **REPORT AND RECOMMENDATION**
        v.                         )    **OF MAGISTRATE JUDGE**
                                   )
Warden McKeither Bodison,          )
                                   )
                    Respondent.    )

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 14.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on December 30, 2009.[1]  On April 21, 2010, the Respondent moved for summary judgment.  By order filed April 22, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  On August 30, 2010, following three extensions, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion.

**FACTS/ PROCEDURAL HISTORY**

Around noon on September 30, 1998, two men entered the home of Trevor "Peter" Jefferson and his girlfriend, Shiwanna Mazyck, located on Nonnie Curve Road in Orangeburg County. (App. 55, 90-91, 182-83.)  Peter, Mazyck, and her three children were

---

[1]This filing date reflects that the envelope containing the petition was stamped as having been received on December 30, 2009, at the Lieber Correctional Institution mailroom. (Pet. Attach. # 3.)  *Houston v. Lack*, 487 U.S. 266 (1988) (holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

home at the time. (App. 56, 91.) Mazyck was walking out of the bathroom into the hallway with her youngest child when the men entered. (App. 93; 114; 117.) One of the men placed a gun to her head and ordered her to lie down on the floor. *Id.* Mayzyck testified that the second man, who had dreadlocks, covered Mazyck's head with a pillow and held her down on the floor. (App. 93-94.) She testified that she looked at him face to face "for a good minute." (App. 118; 120.) While she was on the floor, Mazyck heard the first man walk to the bathroom, ask Peter his name, and fire three shots. (App. 93.) Thereafter, the men fled the home. (App. 95-96.) Peter later died from the gunshot wounds. (App. 173-74).

In her first statement to authorities, Mazyck did not tell the police that she knew the man who held her down. (App. 105; 183.) Later, Mazyck informed investigators that the man who held her down, looked familiar though she did not know him by name. (App. 98, 183). On October 6, 1998, Mazyck identified the Petitioner as the perpetrator by picking his photo out of a photo lineup. (App. 99; 188.) At trial, Mazyck identified the Petitioner as the second man and she testified that she had seen the Petitioner at her house with Peter about two or three months prior to Peter's murder. (App. 95; 99-100.)[2]

A school bus driver, Jerlein Goodwin ("J. Goodwin"), stated that she saw a burgundy car with Florida license tags on Nonnie Curve Road at approximately 12:20 p.m. on the day of the shooting. (App. 133-34.) J. Goodwin also stated that she saw two black men standing beside the rear of the car. (App. 134-35.) A kindergarten aide, Dorothy Goodwin ("D. Goodwin"), was also on the bus that day. (App. 144.)[3] She stated that she also saw the car and there were was one man in the car and two black men by the car and that they had on black clothing and one of the men had short dreadlocks which were sticking out of

---

[2]At the petitioner's bond hearing, Mazyck testified that she knew the Petitioner prior to the murder. (App. 644.)

[3]Jerlein and Dorothy Goodwin are not related. (App. 82.)

his hood.  (App. 144, 147.)  She testified that the man had shorter dreadlocks than the Petitioner had at the time of the trial.  (App. 147-48.)  She also stated that the man with the dreadlocks had something long in his hand, which, she believed, could have been a gun.  (App. 145.)

Based on the  information provided by the Goodwins and other persons regarding the possible ownership of the car, the police went to the home of Ronald Duggins where they found a burgundy Dodge Spirit with Florida tags.  (App. 184-85, 194, 187.)  The sheriff's investigator, David Coleman, testified that Duggins stated that he had given a person named "Cory" a ride on the day of the murder.  (App. 192.)  Duggins stated he did not know "Cory's" last name but that the Sheriff's Department had "Cory's" picture.  *Id*. Coleman testified he looked through the photos beginning with the As looking for any "Corys" who might be a possible suspect.  (App. 192-93.)  He stopped when he found the Petitioner's picture and he had a photo line-up put together which he showed to Mazyck. (App. 193.)

Duggins was called by the defense.  He testified that he had know the Petitioner for several years and that he, the Petitioner, Peter, and Mazyck were all friends.  (App. 330; 332; 349.)  Duggins testified that the burgundy car seen on Nonnie Curve Road had been rented by his cousin and they had recently driven it to New York.  (App. 335.)  He also testified that he was driving the car on Nonnie Curve Road on the day of the shooting and two men flagged him down.  (App. 340-41.)  Duggins testified that he told the police the men's names were "Cory" and "Vick," but he admitted that he made up the names in an attempt to secure a personal recognizance bond.  (App. 340, 342.)  Duggins testified he was not referring to the Petitioner and he knew the Petitioner's last name.  (App. 340.) Duggins testified he identified the Petitioner in the photo line-up because Coleman told him that Mazyck had already identified the Petitioner. (App. 349.)  He testified he lied when he initially identified the Petitioner.  (App. 346; 350.)

3

In 1998, six fingerprints were lifted from the car and in January 2001, it was determined that the one of the prints, a partial print from the outside rear door on the driver's side door, matched the Petitioner's fingerprints. (App. 256; 259-60; 266; 269; 275.) The murder weapon was never found and no physical evidence was discovered at the murder scene. The shooter has never been identified.

The Petitioner was indicted in August and November 2000 for murder and robbery. (App. 688-91.) Beginning on May 15, 2001, a jury trial was held beginning with the Honorable Luke N. Brown, Jr., presiding. (App. 7.) The Petitioner was represented by Jane Berry Osborne. On May 17, 2001, the Petitioner was convicted on both charges and was sentenced to two life sentences to be served concurrently. (Supp. App. II 32, 37.) He timely filed a direct appeal.

The Petitioner was represented on appeal by Joseph L. Savitz, III. On June, 18, 2002, Savitz filed an *Anders* brief raising the following issue: "The judge erred by allowing the state to pit a critical defense witness against two prosecution witnesses." (App. 431.) On July 15, 2002, the Petitioner filed a pro se brief raising the following issue, quoted verbatim: "Did the trial court error in denying the motion to dismiss the charges due to the state's failure to disclose possible exculpatory information?" (Return Attach. # 4.) On April 15, 2003, the South Carolina Court of Appeals dismissed the appeal. (App. 438-39.) The remittitur was sent down on May 16, 2003. (Return Attach. # 5.)

On October 2, 2003, the Petitioner filed an application for post-conviction relief ("PCR") raising the following ground for relief: "Applicant was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution and state law, in that trial counsel failed to object to the State's pitting of witnesses." The Petitioner then filed an amended application for PCR adding the following grounds for relief, quoted verbatim:

> (1) Applicant was denied the right to due process of law and effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution

4

and state law, in that trial counsel failed to file notice of the defense of alibi, further failed to request a jury instruction as to alibi, and failed to adequately investigate a defense of alibi and did not call alibi witnesses to testify;

(2) Applicant was denied the right to due process, and a fundamentally fair trial, in that the State introduced false or misleading testimony, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law. Alternatively, Applicant was denied the right to effective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law in that trial counsel failed to object, or to obtain the exculpatory evidence.

(3) Applicant was denied the right to due process And a fundamentally fair trial, and effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law in that trial counsel failed to object to the State's closing argument, as well as failed to object to portions of the State's opening argument.

(4) Applicant was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law, in that trial counsel failed to object to the hearsay testimony of numerous witnesses, and failed to object that the hearsay testimony also constituted a violation of the defendant's right to confront and cross-examine witnesses pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution;

(5) Applicant was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law, in that trial counsel failed to object, move to redact, request a limiting instruction, or move to admit the evidence, regarding a witness' prior statement;

(6) Applicant was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law, in that trial counsel failed to object to the alleged bad character and alleged prior bad acts of the defendant, and furthermore trial counsel elicited numerous bad acts;

(7) Applicant was denied the right to remain silent, the right against self-incrimination, due process, and a fundamentally fair trial, in that trial counsel failed to advise him that he had the right to testify, or not to testify, along with other related tights thereto, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law. Alternatively, Applicant was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth,

5

and Fourteenth Amendments of the U.S. Constitution, and state law, in that trial counsel failed to request the trial court to inform the Applicant and question him regarding such rights;

(8) Applicant was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law, in that counsel failed to introduce available and material evidence in Applicant's defense; and

(9) Applicant was denied the right to due process, equal protection of the laws, right to effective assistance of counsel, and a fundamentally fair trial, in that the court appointment system used in Orangeburg County at the time of defendant's arrest and/or trial to assign defense counsel to an indigent defendant when a conflict arose with the Public Defender Office resulted in the appointment of inexperienced defense counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and state law.

(App. 440-54.)

On January 19, 2006, an evidentiary hearing was held before the Honorable Lee S. Alford. (App. 454.)  On May 8, 2006, the PCR denying the Petitioner's application for PCR. (App. 661-685.) The Petitioner filed a petition for Writ of Certiorari, raising the following issues:

(1) Did trial counsel err in failing to present a complete alibi defense, i.e., by failing to request an alibi jury instruction, by failing to file a notice of an alibi defense, and by failing to call alibi witnesses due to ignorance of subpoena rules?

(2) Did trial counsel err in failing to object to the state's pitting of witnesses at trial?

(3) Did trial counsel err in failing to object to improper bolstering during the solicitor's opening and closing arguments?

(4) Did trial counsel err in handling of the prior statement of Ronald Duggins?

(5)  Did trial counsel err in failing to object to certain prior bad acts evidence?

(6) Did trial counsel err in failing to advise petitioner of his right not to testify at trial?

(7) Did the trial counsel's cumulative errors deny petitioner effective legal representation and prejudice his case at trial?

6

(8) Did the appointment of inexperienced defense counsel, which occurred per the Orangeburg County court appointment system, violate petitioner's right to due process, a fair trial, equal protection of the laws, and the effective assistance of counsel in the case?

(Return Attach. # 9.)  On June 12, 2008, the Court granted the Petitioner a writ certiorari. (Return Attach. # 11.)  Following briefing, however, the Court issued an order dismissing the writ of certiorari as improvidently granted.  (Return Attach. # 12.)  The remittitur was sent down on July 29, 2009.  (Return Attach. # 13.)

The Petitioner filed this habeas petition raising the following grounds for relief, quoted verbatim:

**Ground One:** Petitioner was denied his constitutional right to a fair trial when the trial judge allowed the state to pit a critical defense witness'
**Supporting Facts:** The trial judge allowed the state to pit a critical defense witness against two prosecution witnesses. The state's case was based on the testimony of the victim's girlfriend, which was extremely uncorroborated. Petitioner took the stand in his own defense.  Ronald Duggins testified for Petitioner, who testified that Petitioner was [not] one of the men who had committed the crimes.  On cross-examination, the Prosecution asked Duggins if the state's two witness were lying when they implicated Duggins as a participant in the crimes along with Petitioner and another individual.

**Ground Two:** Was Petitioner denied his constitutionally guaranteed right to the effective assistance of trial counsel when counsel failed to present a complete defense, by failing to request an alibi jury instruction, and by failing to file a notice of an alibi defense, and by failing to call alibi witnesses due to ignorance of subpoena rules, resulted in denying Petitioner his right to a fair trial?

**Ground Three:** Was Petitioner denied his constitutionally guaranteed right to the effective assistance of trial counsel when counsel failed to object to the State's pitting of witnesses in the case, and the failure to object denied Petitioner his right to a fair trial?

**Ground Four:** Was counsel Constitutionally ineffective for failing to object to the solicitor's improper bolstering during opening and closing arguments, that denied Petitioner his right to effective representation and his right to a fair trial?

7

**Ground Five:** Was Petitioner denied his Constitutional right to effective representation when Counsel erred in the handling of the prior statements of Ronald Duggins, and as result Petitioner was denied his right to a fair trial?

**Ground Six:** Was Counsel ineffective for failing to object to certain prior bad acts evidence, and as a result Petitioner was denied his Constitutional right to a fair trial?

**Ground Seven:** Was Petitioner denied his Constitutional right to the effective assistance of trial counsel when counsel failed to advise Petitioner of his right not to testify, and as a result Petitioner was denied his Fifth Amendment right against self-incrimination and his constitutional right to a fair trial?

**Ground Eight:** Did the State Court unreasonably apply clearly established federal law where trial Counsel's cumulative errors denied Petitioner his Constitutional right to effective representation that resulted in the denial of a fair trial; wherein prejudice should be presumed?

(Habeas Pet. at 6 and Attach. 1-16.)

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

8

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

9

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

10

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting

a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.  Where a petitioner has failed to comply with state procedural requirements and cannot make the

required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

13

He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

The Respondent contends that the issues which the Petitioner raises in Grounds One and Four are procedurally barred as the Petitioner did not raise these claims at trial or PCR. The undersigned agrees that the issues raised in Ground One are procedurally barred, but not the issues raised in Ground Four.

In Ground One, the Petitioner contends that he was denied a fair trial when the trial judge allowed the prosecutor to pit a critical defense witness against two prosecution witnesses. Although the Petitioner raised this issue in his direct appeal, he did not raise the issue at trial. *See State v. Johnson,* 501 S.E.2d 423, 424 (S.C.1999) (stating that issue not preserved at trial cannot be raised for the first time on direct appeal). Accordingly, this claim is procedurally barred from habeas review. As stated above, in order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray,* 477 U.S. 478. The Petitioner has not shown cause and prejudice in regard to this claim. Accordingly, it is procedurally barred.[4]

In Ground Four, the Petitioner contends trial counsel was ineffective for failing to object to the solicitor's improper bolstering during opening and closing arguments. The Respondent contends this issue is also procedurally barred. The undersigned disagrees.

The record shows that although this issue was raised in the Petitioner's PCR application, the PCR court did not rule on it and the Petitioner did not file a Rule 59(e) motion seeking a ruling. (App. 661-686.) In *Marler v. State,* 653 S.E.2d 266, 267 (S.C.

---

[4]The undersigned notes a similar claim is raised in Ground Three and is discussed on the merits herein in the context of an ineffective assistance of counsel claim. The Petitioner, recognizing that perhaps the claim raised in Ground One was procedurally barred, specifically incorporated his claims in Ground One with his argument regarding the claims raised in Ground Three. (Pet'r's Mem. Opp. Summ. J. at 26.)

2007), the South Carolina Supreme Court clarified that its previous failure to consistently apply Rule 59(e) was based upon "unique" circumstances and that these unique circumstances "do not change the general rule that issues which are not properly preserved will not be addressed on appeal."   In *Bostick v. Stevenson,* 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit determined that as of the time of Bostick's state proceedings which was prior to the decision in *Malar,* "South Carolina Rule 59(e) was not consistently applied by the state's courts, and [ ] as a result, his failure to comply with the rule" did not prevent him from pursuing the merits of certain of his claims in a § 2254 petition. *Bostick*, 589 F.3d at 164. Likewise, here, the Petitioner's PCR was denied May 8, 2006, which was prior to the *Malar* decision.   Therefore, pursuant to *Bostick,* the undersigned declines to find that this issue is procedurally barred.

### Ground Two

In Ground Two, the Petitioner alleges his trial counsel was ineffective for failing to present a complete defense, request an alibi jury instruction, file a notice of an alibi defense, and  call alibi witnesses due to ignorance of subpoena rules.

To prove ineffective assistance of counsel, the Petitioner must show that trial counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms.  *Id.* at 688. Further, the Petitioner also must show that he was prejudiced by counsel's alleged deficient performance, in that because of counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. There is a strong presumption that trial counsel's conduct is within the wide range of reasonable professional assistance, and the court is required to grant broad deference to scrutinizing an attorney's performance.  *Id.* at 688-89.

The PCR Court found that the trial counsel was unaware of the potential alibi witnesses at the time of the trial.  (App. 665.)   Furthermore, the PCR court found that the

alibi testimony from these witnesses which was presented at the PCR hearing was not specific enough to preclude the possibility that the petitioner could have committed the crime. (App. 667.)

First, the undersigned notes that the trial court did instruct the jury on alibi. (App. 473.) As for the Petitioner's other arguments, trial counsel testified that she did not subpoena the potential alibi witnesses because she erroneously believed that she could not subpoena an out of state witness. (App. 562-654.) However, even if she had subpoenaed these witnesses, their testimony would not have provided the Petitioner with an alibi defense

In *Ford v. State*, 442 S.E.2d 604 (S.C. 1994), the South Carolina Supreme Court held that trial counsel's failure to request an alibi charge is deficient representation where there is evidence presented that the defendant was in another place at the time the crime was committed. However, "since an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." *State v. Robbins*, 271 S.E.2d 319, 320 (S.C. 1980).

Here, the Petitioner has not presented any testimony or evidence which conclusively establishes that the Petitioner was elsewhere when the murder occurred at approximately 12:00 p.m. on September 30, 1998. Thus, the PCR court did not err in finding that trial counsel was not ineffective for failing to pursue the defense of alibi. The decision of the state court was neither contrary to, nor an unreasonable application of, clearly established federal law under § 2254(d)(1). Therefore, this ground should be dismissed.

**Ground Three**

In Ground Three, the Petitioner alleges trial counsel was ineffective for failing to object to the prosecution pitting the testimony of four witnesses, Duggins, Mazyck, and the

Goodwins, against the testimony of the Petitioner.[5]  The PCR court generally determined that it was unlikely that the prosecutor's pitting of the testimony of Duggins, Mazyck, and the Goodwins against the Petitioner affected the outcome of the trial.   (App. 675.)  The PCR Court noted that there was strong evidence supporting the Petitioner's guilt which included the eyewitness identification of the Petitioner by Mazyck; the Petitioner's fingerprint on a car which was seen near the crime scene on Nonnie Curve Road shortly after the murder; and the Goodwins describing one of the black man near the car as having dreadlocks.  (App. 681.)

First, the Petitioner argues the prosecutor improperly pitted the Goodwins' testimony against Duggins' testimony in regard to the location of the car which they all testified was on Noonie Curve Road on the day of the murder.  The PCR court found that the prosecutor did pit these witnesses against each other on this issue and trial counsel should have objected. (App. 671-72.)   However, the PCR court concluded that the failure to object to this line of questioning resulted in little or no prejudice to the Petitioner.  (App. 672.)  The undersigned agrees that pitting these witnesses against each other solely on their testimony regarding the location of the car probably did not result in any prejudice to the Petitioner as the exact location of the car on Noonie Curve Road was not a crucial issue at trial. Accordingly, the decision of the state court was neither contrary to, nor an unreasonable application of, clearly established federal law under § 2254(d)(1). Therefore, this issue is without merit.

The Petitioner further alleges the trial court erred in allowing the prosecutor to improperly pit the testimony of the Goodwins regarding the description of the Petitioner against the Petitioner.  Specifically, the Petitioner points out that the prosecutor asked him if it was a coincidence that the Goodwins saw a black male with a hooded sweater and dreadlocks. (App. 417-18).  The Petitioner responded that "she didn't give my description

---

[5]The undersigned notes that Duggins was called as a defense witness.

. . . that doesn't look like me. . . she said it, she told you herself, that it doesn't look like me. Look at the picture." (App. 417). The PCR court found that this line of questioning and responses did not constitute pitting the witnesses against each other and, in any event, the Petitioner suffered little or no prejudice.

The Petitioner also contends trial counsel should have objected to the prosecutor's cross-examination of the Petitioner regarding whether witnesses were lying when they implicated the Petitioner and another individual. (Pet. at 6.) The prosecutor specifically asked the Petitioner if: he had seen Duggins' statement, Duggins had made up that one of the men Duggins encountered had a pillow, Mazyck's testimony that someone covered her face with a pillow was a coincidence; he recalled that Duggins' statement indicated that Duggins was afraid of the two men; Mazyck misidentified him as the perpetrator; if this was all a "get [the Petitioner] conspiracy;" and the fact that his photo appeared in a lineup was a coincidence. (App. 417-419.) The Respondent argues that while the trial court may have erred in allowing the prosecutor to pit the testimony of Duggins and Mazyck against the Petitioner, any error was clearly harmless. (Res'p'ts Mem. Supp Summ. J. Mot. at 32.)

Finally, the Petitioner argues that trial counsel was ineffective for failing to object when the solicitor pitted the testimony of the Petitioner and his mother. The solicitor asked the Petitioner about his mother's testimony that Petitioner had lived with her in 1997. (App. 379, 411-12, 420). The PCR court found that the testimony of the Petitioner and his mother was not inconsistent in that both testified the Petitioner went to live with his mother in 1997. (App. 411-12, 385-86, 672.)

Reviewing these lines of questioning and the Petitioner's responses, however, the undersigned finds that the prosecutor did improperly pit the testimony of Duggins, Mazyck, the Goodwins', and the Petitioner's mother against the Petitioner. *Burgess v. State,* 495 S.E.2d 445, 447 (S.C. 1998) ("No matter how a question is worded, anytime a solicitor asks a defendant to comment on the truthfulness or explain the testimony of an adverse witness, the defendant is in effect being pitted against the adverse witness. This kind of

18

argumentative questioning is improper."). Furthermore, improper pitting of witnesses is prejudicial and cannot be deemed harmless, particularly when credibility is the crucial issue in a case. *State v. Brown,* 374 S.E.2d 669, 670 (S.C. 1988); *State v. Sapps,* 369 S.E.2d 145, 146 (S.C 1988). Here, the evidence of guilt presented at trial consisted almost entirely of witness testimony and the Petitioner's credibility was crucial making a finding of harmless error virtually impossible.

As noted above, the evidence included the eyewitness identification of the Petitioner by Mazyck; the Petitioner's fingerprint on a car which was seen near the crime scene on Nonnie Curve Road shortly after the murder; and the Goodwins describing one of the black man near the car as having dreadlocks. (App. 681.) The only physical evidence, the partial fingerprint, was not found at the crime scene and by itself did not link the Petitioner to the murder. Mazyck's eyewitness testimony was perhaps most crucial and the prosecutor's improper pitting of her testimony against the Petitioner's testimony was clearly prejudicial.

Trial counsel's failure to object to the prosecutor's improper pitting of witnesses was deficient and, as credibility was crucial in this case, her deficient performance prejudiced the outcome of the Petitioner's trial, satisfying the second prong of *Strickland.* The Petitioner was denied his Sixth Amendment right to effective assistance of counsel and is entitled to relief on this claim.

**Ground Four**

In Ground Four, the Petitioner alleges that trial counsel was ineffective for failing to object to the solicitor's improper bolstering during opening and closing arguments. Specifically, the Petitioner contends that trial counsel should have objected when, in his opening statement, the solicitor stated that the case was important to him, and the victim, and the victim's family and it was too important for him to "say something that isn't true." (Pet'r's Mem. Opp. Summ. J. Mot. at 39.) The Petitioner also contends that trial counsel should have objected when the solicitor stated, in his closing argument, that justice had

been delayed for Mazyck and the victim's family and he thanked the jury for their time and attention.  *Id.* at 40.

The undersigned notes that at the PCR hearing, trial counsel testified that she did not know that she could object during the solicitor's opening statement or closing argument. (App. 573-74.)  However, despite this erroneous belief, the undersigned does not find that these comments were objectionable.  In his opening statement, the solicitor stated that he was not going to promise to prove something that he could not because the case was too important.  He was referring to the fact that the prosecution was proceeding under the theory of accomplice liability, (i.e. the hand of one equals the hand of all), and because the Petitioner was not the actually shooter, he  was not going to state that he was going to prove that the Petitioner pulled the trigger of the gun.  (App. 86.)  He did state that the case was important to him and the victim's family, but the case was a murder trial involving serious charges and obviously an important case to those involved. As for his closing argument, the undersigned also does not find the comments objectionable.  Stating that justice had been delayed for Mazyck and the victim's family and he thanking the jury for their time and attention are not improper comments.

> As a general premise, a prosecutor's repeated references to his or her personal opinion about a defendant may indeed be found improper. However, a prosecutor's "use [of] the phrase 'I think' in an innocuous, conversational sense" does not violate due process because such use "do[es] not suggest an attempt to replace the evidence with the prosecutor's personal judgments."  Prosecutors must remain mindful to avoid the expression of personal opinions. However, in this case, the prosecutor's statements did not "so infect[ ] the trial with unfairness as to make the resulting [sentence] a denial of due process."

*Higgs*, 353 F.3d 281, 332 (4th Cir. 2003)( (internal citation omitted).  Even if the prosecution makes improper remarks, it is well settled that "[i]mproper remarks during closing argument do not always mandate retrial." *United States v. Higgs*, 353 F.3d 281, 330 (4th Cir. 2003).  Traditionally the relevant question to ask in "solicitor comment" cases is whether the comments so infected the trial with unfairness as to make the resulting conviction a denial

of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). "A new trial for prosecutorial misconduct is a remedy reserved for the most egregious case." *United States v. Dudley*, 941 F.2d 260 (4th Cir. 1991).

In *Higgs,* the prosecutor referred to the victims and stated, "I look at them and I can't believe" what the defendant did to them. *Id.* She then stated that in her opinion, "it would be a better world in the future without [the defendant]." *Id.* The Fourth Circuit did not find these comments violated the defendant's constitutional rights.

Comparing the prosecutor's comments in *Higgs* with those made here, the remarks in the present case were much less objectionable. Viewing the case as a whole, even if it were determined that the solicitor's comments made in opening statements and closing arguments were somewhat improper and trial counsel should have objected, trial counsel's inaction did not rise to the level of ineffective assistance of counsel requiring the granting of a new trial. The court has reviewed the record and finds that the prosecutor's comments did not render the Petitioner's trial fundamentally unfair or prejudice him. Therefore, trial counsel was not constitutionally ineffective in failing to object during closing arguments. Accordingly, based on the foregoing, the undersigned finds that this claim is without merit.

**Ground Five**

In Ground Five, the Petitioner contends trial counsel was ineffective in her handling of the prior statements of Ronald Duggins. Duggins testified that in his statements to police when he referred to "Cory" as being the perpetrator, he did not mean the Petitioner. (App.340.) On cross-examination, without objection, the prosecution admitted a prior inconsistent statement of Duggins in an attempt to impeach him. (App. 350-51.) Duggins testified that the prior inconsistent statement was a lie. (App. 351; 357.) Trial counsel, however, did not move to introduce another of Duggins' statements which was consistent with his trial testimony. At the PCR hearing, trial counsel testified that she did not know that she could have used Duggins' prior consistent statement in an attempt to rehabilitate him before the jury. (App. 582.) The PCR court noted that Duggins testified that his entire

21

inconsistent statement was a lie.  (App. 671.)   The PCR court found that this was part of trial counsel's defense strategy.  *Id*.

The record does not support the PCR court's finding that trial counsel's failure to object to the admission of the statement and admit a prior consistent statement to rehabilitate Duggins was a part of defense trial strategy. The PCR court noted that the testimony of Duggins was all over the place and the defense strategy was to show that the police investigation was poorly conducted and "based upon statements by a man who could not be trusted to tell the truth . . . "  In fact, as noted above, trial counsel testified that had she known she could have admitted the prior consistent statement, she would have.  The trial strategy was not to show that Duggins could not be trusted to tell the truth; he was after all a defense witness.  The trial strategy was to show that Duggins had lied to the police, but that he was telling the truth at trial.  A prior consistent statement rehabilitating him was important to his credibility and likewise the Petitioner's defense.  Therefore, trial counsel's failure to object to the admission of the prior inconsistent statement may have been trial strategy, but her failure to move to admit a prior consistent statement was not.

Trial counsel's failure to admit Duggins' prior consistent testimony was deficient and, as the credibility of Duggins was an important part of the Petitioner's defense, her deficient performance prejudiced the outcome of the Petitioner's trial, satisfying the second prong of *Strickland.* The Petitioner was denied his Sixth Amendment right to effective assistance of counsel and is entitled to relief on this claim.

**Grounds Six and Seven[6]**

In Ground Six, the Petitioner contends trial counsel was ineffective for failing to object to certain prior bad acts evidence which was introduced during the Petitioner's testimony.  In Ground Seven, the Petitioner contends trial counsel was ineffective for failing

---

[6]As these two grounds are intertwined, the undersigned addresses them together to avoid redundancy.

to advise the Petitioner of his right not to testify.  During the trial, at the beginning of the Petitioner's testimony, trial counsel asked the Petitioner the following:

> Q: Mr. Credell, now you understand that you are not required to testify?
>
> A: Yes, ma'am.
>
> Q: And you and I have discussed this at great length?
>
> A: Yes.

(App. 391.)

At trial, on direct, the Petitioner testified that he had been convicted of attempted armed robbery in 1991 and several other later misdemeanors, including a simple possession charge and a driving while under suspension charge. (App. 642.) He also admitted that he had been selling drugs from 1996 to the summer of 1997. (App. 391-92; 399.)   On cross-examination, the following colloquy took place:

> Q:  Now, you've been in numerous trouble, I mean, you just, you've basically spent your entire life in trouble, correct?
>
> A: No, Sir.  I'm thirty years old, I've been arrested, what seven, eight times.
>
> Q: Okay.
>
> A: That's not a lot. I spent one year in prison out of thirty years.
>
> Q: So, an armed robbery, three misdemeanors and numerous other arrests for a thirty year old man, that I mean, that's not too many?
>
> A: I've seen worse.

(App. 415.)

At the PCR hearing, the Petitioner testified that he was not advised by trial counsel that if he did not testify the trial judge would instruct the jury that his decision not to testify could not be held against him and his prior record would not be admissible.  (App. 539-40.)  The Petitioner argues that, at the PCR hearing, trial counsel admitted that she did not know about the consequences of testifying and what crimes could be used to impeach the Petitioner.   (Pet. Attach. at 33.)

23

At the PCR hearing, trial counsel agreed that she did not advise the Petitioner that if he did not testify, the jury would not be told of his prior record the trial court (App. 594) and that the trial court would instruct the jury not to use the fact that the Petitioner did not testify against him.   (App. 599.)   Further, trial counsel initially testified that she felt in her gut that the Petitioner's prior crimes could be used to impeach him.  She subsequently testified that she was "sure she did look at the rule" but she did not have a conscious memory of reviewing the rule in regard to this case.  (App. 623-24.)  She also testified that she did not know she could ask for a hearing to determine which prior crimes would be admissible.  (App. 592.)  Further, trial counsel candidly testified that at the time of the trial she felt she had done a good job representing the Petitioner; but that she now believes she did not provide him with effective assistance of counsel. (App. 595; 609.)  She elaborated that she had experience only in family and bankruptcy courts and she had "never worked in the criminal area [and she ] had no experience in it."  (App. 596.)[7]  She also testified that she believed the Petitioner was prejudiced by her performance.  *Id*.

The  PCR  court  held  that  counsel's  actions  were  trial  strategy  "to  combat overwhelming evidence against [the Petitioner].  Admit the felony, misdemeanors and drug dealing but deny he committed these much more serious charges." (App. 679.)   The PCR court  concluded  that  even  if  the  Petitioner  had  chosen  not  to  testify,  there  was overwhelming evidence against him such that the outcome of the trial would not have been different.  (App. 684.)

_____

[7]Trial counsel also testified that she was a civil attorney and had very little criminal experience. (App. 596.)  She testified that prior to her appointment to represent the Petitioner, her entire criminal experience consisted of defending one defendant on a driving under  the  influence  charge.   (App. 560.)   The  undersigned  notes  that  trial  counsel's performance in this case is by no means a reflection on her overall ability as an attorney. Her practice was, and is, limited to family court and bankruptcy court. (App. 560; 596.) Just as an experienced criminal attorney would not be well-versed in family and bankruptcy court laws and rules, trial counsel was not experienced with criminal law and rules.  The undersigned also notes that apparently very shortly after trial counsel's appointment in this case,  the  manner  in  which  attorneys  are  appointed  was  changed  so  that  civil  attorneys would not be appointed to represent defendants in criminal cases.  (App. 558-59; 560.)

Likewise, the Respondent argues that the Petitioner's prior record was brought out on direct examination as part of a valid trial strategy.  Further, the Respondent states that the Petitioner was soft-spoken and a good witness and it is unlikely that the result of the trial would have been any different had the Petitioner not testified because much of the State's case against him, including the fingerprint evidence, would have been unchallenged.

A defendant in a criminal case has a fundamental constitutional right to testify in his own defense. *See Rock v. Arkansas,* 483 U.S. 44, 51-53 (1987).  Furthermore, "[t]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." *Brookhart v. Janis*, 384 U.S. 1, 4 (1966) (internal quotation marks and citations omitted). However, there is no clearly established federal law that places an affirmative duty on a trial court to advise a defendant of his right to testify or to obtain a waiver of that right on the record.  *See Thompson v. Battaglia,* 458 F.3d 614, 619 (7th Cir. 2006).

According to Rule 609(a)(1) and (2), SCRE, prior convictions punishable by more than one year imprisonment and convictions of a crime involving dishonesty or false statement, regardless of the punishment, are admissible for impeaching the credibility of a defendant who testifies when the court determines that the probative value of admitting this evidence outweighs its prejudicial effect.  The South Carolina Supreme Court has adopted the  five-factor analysis generally employed by the federal courts for weighing the probative value for impeachment of prior convictions against the prejudice to the accused. *State v. Colf*, 525 S.E.2d 246, 248 (S.C. 2000). The following factors, along with any other relevant factors, should be considered by the trial court: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *Id.*  In State v. Martin,

556 S.E.2d 706, 710 (S.C. Ct.App. 2001), the court noted a preference for an on-the-record balancing test by the trial court.

Trial counsel testified that she did not know that she could request such a hearing to determine which crimes would be admissible to impeach the Petitioner. Further, she testified that she did not advise the petitioner that if he did not testify his prior record would not be admissible and that the trial court would instruct the jury not to use the Petitioner's decision to not testify against him.

The Fourth Circuit has held that "the advice provided by a criminal defense lawyer on whether his clients should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" *Carter v. Lee,* 283 F.3d 240, 249 (4th Cir. 2002)(citing *Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir. 1983). Generally, however, where defendants have clearly acceded to trial counsel's advice but trial counsel was later found to have misinformed defendants with respect to the consequences of taking the stand, courts have found ineffective assistance of counsel. *See, e.g., Foster v. Delo*, 11 F.3d at 1457 (8th Cir. 1983) (holding that counsel "impeded an informed decision whether to waive or invoke a fundamental constitutional guarantee" where counsel misinformed defendant of the risks and failed to inform defendant of the benefits of testifying at the penalty phase of a capital murder trial); *Blackburn v. Foltz,* 828 F.2d 1177, 1182 (6th Cir. 1987) (holding that defendant was deprived of meaningful opportunity to decide whether to testify where counsel misinformed defendant about the Government's use of prior convictions if defendant took the stand); *United States v. Poe*, 352 F.2d 639 (D.C.Cir. 1965) (holding that defendant was deprived of a fair trial where he waived his right to testify based on counsel's misinformation that the Government could use inadmissible statements to impeach his testimony). *But see, e.g., Rogers-Bey v. Lane*, 896 F.2d 279, 283 (7th Cir. 1990) (holding that, while counsel's advice not to testify was based in part on the erroneous belief that a prior conviction could be used to impeach defendant, advice was still reasonable and did not impede meaningful waiver where counsel advanced

other reasonable grounds, such as belief that the prosecution had failed to prove its case, in advising defendant not to testify).

First, as the PCR court correctly noted, despite trial counsel's candid evaluation of her performance, ineffectiveness is a question which the court must decide. *Harris v. Dugger,* 874 F.2d 756, 761 n. 4 (11th Cir.1989). "[A]dmissions of deficient performance by attorneys are not decisive." *Id.* The relevant inquiry is not whether any one attorney believes she was ineffective, but rather whether her performance fell below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 686 (holding "the defendant must show that counsel's representation fell below an objective standard of reasonableness."); *United States v. Little*, 14 Fed.Appx. 200, 205 (4th Cir. 2001) (holding that the subjective beliefs behind counsel's strategic decisions at trial are irrelevant to an ineffective assistance claim).

Here, trial counsel erroneously advised the Petitioner about several key aspects regarding his decision to testify. Trial counsel did not advise the Petitioner that if he did not testify, the jury would not be told of his prior record the trial court (App. 594) and that the trial court would instruct the jury not to use the fact that the Petitioner did not testify against him. (App. 599.) Even had the Petitioner knowingly decided to testify, all of the Petitioner's prior crimes were not admissible and trial counsel testified that she did not know that she could request a hearing during which the trial court would determine which of the Petitioner's prior convictions would be admissible. Admission of the Petitioner's entire criminal record could do nothing but damage his credibility before the jury. Further, the Petitioner states that had he been properly advised, he would not have testified.

Trial counsel's failure to fully and properly advise the Petitioner regarding his right to testify or not testify was deficient and her deficient performance prejudiced the outcome of the Petitioner's trial, satisfying the second prong of *Strickland*. The Petitioner was denied his Sixth Amendment right to effective assistance of counsel and is entitled to relief on this claim.

**Ground Eight**

In Ground Eight, the Petitioner contends the state court unreasonably applied clearly established federal law where trial counsel's cumulative errors denied the Petitioner effective representation and resulted in the denial of a fair trial.

First, the undersigned notes that in analyzing ineffective assistance of counsel claims, the Fourth Circuit has emphasized that it evaluates such claims on an individual rather than cumulative basis. *Fisher v. Angelone,* 163 F.3d 835, 852 (4th Cir. 1998) (finding that "ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively"). Second, as the undersigned has determined that the Petitioner has shown his trial counsel was ineffective on several grounds, as discussed above, this claim need not be addressed.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 14) be DENIED; and the petition GRANTED. It is further recommended that the State of South Carolina be given a limited time period within which to re-try the Petitioner or release him.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 26, 2011
Greenville, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

28